

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| VS. | § § | CASE NO. 9:06-CR-30(17) |
| VICTOR SCOTT INGRAM | § § | |

### FINDINGS OF FACT AND RECOMMENDATION ON GUILTY PLEA BEFORE THE UNITED STATES MAGISTRATE JUDGE

The District Court referred this matter to the undersigned United States Magistrate Judge for administration of a guilty plea and allocution under Rules 11 and 32 of the Federal Rules of Criminal Procedure. Magistrates have the statutory authority to conduct a felony guilty plea proceeding as an "additional duty" pursuant to 28 U.S.C. § 636(b)(3).  *United States v. Bolivar-Munoz*, 313 F.3d 253, 255 (5th Cir. 2002), *cert. denied,* 123 S. Ct. 1642 (2003).

On March 20, 2007, this cause came before the undersigned United States Magistrate Judge for entry of a guilty plea by the Defendant, Victor Scott Ingram, on **Count I** of the

1

charging Information[1] filed in this cause.  Count I of the Information charges that on or about September 4, 2005, in the Eastern District of Texas, Victor Scott Ingram, Defendant herein, did knowingly, intentionally and unlawfully possess with intent to distribute more than 100 kilograms of a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

Defendant, Victor Scott Ingram, entered a plea of guilty to Count I of the Information into the record at the hearing.

After conducting the proceeding in the form and manner prescribed by Federal Rule of Criminal Procedure 11 the Court finds:

a. That Defendant, after consultation with counsel of record, has knowingly, freely and voluntarily consented to the administration of the guilty plea in this cause by a United States Magistrate Judge in the Eastern District of Texas subject to a final approval and imposition of sentence by the District Court.

b. That Defendant and the Government have entered into a plea agreement which was disclosed and addressed in open court, entered into the record, and placed under seal.

c. That Defendant is fully competent and capable of entering an informed plea, that Defendant is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing, voluntary and freely made plea.  Upon addressing the Defendant personally in open court, the Court determines that Defendant Victor Scott Ingram's plea is

---

[1] The Defendant executed a *Waiver of Indictment* prior to the guilty plea hearing.  The waiver was filed in the record.

voluntary and did not result from force, threats or promises. *See* FED. R. CRIM. P. 11(b)(2).

    d.    That Defendant's knowing, voluntary and freely made plea is supported by an independent factual basis establishing each of the essential elements of the offense and Defendant realizes that his conduct falls within the definition of the crime charged under 21 U.S.C. § 841(a)(1).

## STATEMENT OF REASONS

As factual support for Defendant's guilty plea, the Government presented the following evidence, which was admitted into the record at the plea hearing. *See Factual Resume.* If the case proceeded to trial, the Government and Defendant agreed that the Government would prove, beyond a reasonable doubt, that the Defendant possessed, with the intent to distribute a detectable amount of marijuana.

Specifically, in support, the Government would establish, through sworn testimony and evidence, including expert witnesses and admissible exhibits, the following facts, as stated in the *Factual Resume:*

On or about September 4, 2005, Juan Andrade (Andrade) and the Defendant flew to Houston, Texas from California. The Defendant then drove to McAllen, Texas. Richard Solis (Solis) and Alfredo Olmeda (Olmeda) stayed in a hotel while they waited for the Defendant. Eventually, Solis, Olmeda, and the Defendant met to discuss their drug trafficking venture. Both Olmeda and Solis followed the Defendant to a location where they picked up a motor boat that was packed with marijuana. Olmeda and Solis followed the Defendant to put the motorboat into the Gulf of Mexico. Olmeda drove the Defendant's rental vehicle, which had the empty boat

trailer attached to it, to Corpus Christi. This trailer was registered under an alias name used by Juan Higuera (Higuera). Olmeda was stopped by a Texas Department of Public Safety Trooper at the Sarita U.S. Border Patrol checkpoint in South Texas.

The Defendant then drove the boat to Corpus Christi were it was docked and then transported to Conroe, Texas by the Defendant with the marijuana inside the motorboat. Evidence would show that the motorboat used by the Defendant was registered under an alias used by Higuera. The Defendant had been contacted by the Andrade about the opportunity to fly from California to Texas to transport marijuana from South Texas up the Ship Channel to Corpus Christi. Andrade is the cousin of Jose Reyes Garcia (Reyes), who requested that Andrade find a driver for the motorboat. Andrade was paid by Reyes for supplying the Defendant. Reyes is the owner of the marijuana. Reyes lives in Nacogdoches, Texas. The marijuana was eventually delivered to Nacogdoches, Texas. Nacogdoches is in the Eastern District of Texas.

Additionally, the Government would establish that on or about October 1, 2005, the Defendant, was caught with 556 pounds of marijuana concealed in the motorboat he was operating along the southern coast of Texas. This evidence was submitted to the Department of Public Safety Crime Lab where it was tested and it was in fact determined to be 556 pounds of marijuana.

Defendant, Victor Scott Ingram, signed the Factual Resume and acknowledged that the above-stated facts would be proven by the Government through evidence and the testimony of other witnesses. Counsel for Defendant and the Government attested to Defendant's

competency and capability to enter an informed plea of guilty. The Defendant personally testified that he was entering his guilty plea knowingly, freely and voluntarily.

## RECOMMENDED DISPOSITION

**IT IS THEREFORE** the recommendation of the undersigned United States Magistrate Judge that the District Court accept the Guilty Plea of Defendant which the undersigned determines to be supported by an independent factual basis establishing each of the essential elements of the offenses charged in **Count I** of the charging **Information** on file in this criminal proceeding. The Court also recommends that the District Court conditionally accept the plea agreement.[2] Accordingly, it is further recommended that, Defendant, Victor Scott Ingram, be finally adjudged as guilty of the charged offense under Title 21, United States Code, Section 841(a)(1).

Defendant is ordered to report to the United States Probation Department for the preparation of a presentence report. At the plea hearing, the Court admonished the Defendant that the District Court may reject his plea and that the District Court can decline to sentence

---

[2]"(3) Judicial Consideration of a Plea Agreement.
(A) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report.
(B) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(B), the court must advise the defendant that the defendant has no right to withdraw the plea if the court does not follow the recommendation or request.
(4) Accepting a Plea Agreement. If the court accepts the plea agreement, it must inform the defendant that to the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the agreed disposition will be included in the judgment.
(5) Rejecting a Plea Agreement. If the court rejects a plea agreement containing provisions of the type specified in Rule 11(c)(1)(A) or (C), the court must do the following on the record and in open court (or, for good cause, in camera):
(A) inform the parties that the court rejects the plea agreement;
(B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and
(C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated." FED. CRIM. P. 11(c)(3)-(5).

Defendant in accordance with the plea agreement, the federal sentencing guidelines and/or the presentence report because the sentencing guidelines are advisory in nature. The District Court may defer its decision to accept or reject the plea agreement until there has been an opportunity to consider the presentence report. *See* FED. R. CRIM. P. 11(c)(3). If the Court rejects the plea agreement, the Court will advise Defendant in open court that it is not bound by the plea agreement and Defendant may have the opportunity to withdraw his guilty plea, dependent upon the type of the plea agreement. *See* FED. R. CRIM. P. 11(c)(3)(B). If the plea agreement is rejected and Defendant still persists in the guilty plea, the disposition of the case may be less favorable to Defendant than that contemplated by the plea agreement. Defendant has the right to allocute before the District Court before imposition of sentence.

## **OBJECTIONS**

Within ten (10) days after receipt of this report, any party may serve and file written objections to the report and recommendation of the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(C). Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within ten (10) days after service shall bar an aggrieved party from *de novo* review by the District Judge of the proposed findings, conclusions and recommendations, and from appellate review of factual findings and legal conclusions accepted by the District Court except on grounds of plain error. *Douglass v. United Serv. Auto. Ass'n.,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*); 28 U.S.C. § 636(b)(1). The constitutional safeguards afforded by Congress and the courts require that, when a party takes advantage of his right to object to a magistrate's findings or recommendation, a district judge

must exercise its nondelegable authority by considering the actual evidence and not merely by reviewing and blindly adopting the magistrate's report and recommendation.  *See Hernandez v. Estelle,* 711 F.2d 619, 620 (5th Cir. 1983); *United States v. Elsoffer*, 644 F.2d 357, 359 (5th Cir. 1981) (per curiam).

**SIGNED this the 22nd day of March, 2007.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE